**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**DONALD J. KIRCKOF, d/b/a Rochester Lapidary Jewelers,**

Plaintiff,

v.

**WAYNE BROWN, individually, and METROWEST CONSULTING GROUP,**

Defendants.

Civil No. 01-476 (JRT/SRN)

**ORDER**

---

APPEARANCES

Alfred H. Edwall, Jr., Esq., for Plaintiff.

John C. Gunderson, Esq., for Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on April 17, 2002, on Defendant's Motion to Compel Discovery and Modify Scheduling Order (Doc. No. 28). The case has been referred to the undersigned for resolution of pre-trial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. BACKGROUND FACTS

This litigation arises out of a contractual relationship between the parties. In 1997, Plaintiff purchased Rochester Lapidary Jewelers from his father. However, Plaintiff had little experience in business matters, so in 1999, he sought outside consulting assistance to help him run his business. Defendants solicited a business consulting partnership with Plaintiff, and as a result, the parties entered into a number of consulting agreements.

FILED MAY 21 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

While Defendants performed consulting services for Plaintiff, they essentially ran Plaintiff's business and had complete control over the company's books and records. Defendants' accountant prepared Plaintiff's personal and business tax returns. During the course of the consulting relationship, Plaintiff alleges that Defendant became increasingly abusive towards him, making slanderous remarks, and attempting to steal Plaintiff's business from him. As a result of these alleged activities, Plaintiff terminated Defendants' services in February, 2001.

## II. DEFENDANTS' MOTION TO COMPEL DISCOVERY

### A. Scope of Discovery

The Federal Rules of Civil Procedure contemplate liberal discovery. The information sought only need be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U.S. 495, 501 (1947). A party is allowed to fully explore the relevant facts so that it can present reasoned and informed evidence and theories at trial.

Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

Fed. R. Civ. P. 26(b)(1) (2001). The Rule limits discovery to material relevant to a claim or defense of any party.

The Advisory Committee noted that under the previous Rule 26, and particularly in cases involving large quantities of discovery, discovery requests tended to "sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the 'subject matter' involved in the action." Fed. R. Civ. P. 26 advisory committee's note. The amendment to Rule 26(b)(1) "is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery." Id. Although the rule intends for the parties to focus on the actual claims and defenses involved in the action, a variety of information "not directly pertinent to the incident in suit could be relevant to the claims or defenses" in the lawsuit, including information about organizational arrangements or filing systems, and information that could be used to impeach a likely witness. Id. The rule allows discovery of any matter relevant to any existing claim or defense of any party, and signals there is no longer an entitlement to discovery of information to develop new claims or defenses not already identified in the pleadings. Id.

**B. Defendant's Motion to Compel**

Plaintiff responded to Defendants' Request for Production of Documents on August 30, 2001, and to Defendants' Request for Production of Documents (Second Set) on October 5, 2001. In their present motion, Defendants contend that Plaintiff has not fully responded to these document requests, and request an Order compelling Plaintiff to provide additional financial records and medical records.

To begin, the Court notes that Defendants failed to comply with D. Minn. LR 37.2, which provides:

> Any discovery motion filed pursuant to Rules 26 through 37 of the Federal Rules of Civil Procedure shall include, in the motion itself or in an attached memorandum, (a) a specification of the discovery in dispute, and (b) a verbatim recitation of each interrogatory, request, answer, response, and objection

> which is the subject of the motion or a copy of the actual discovery document which is the subject of the motion. In the case of motions involving interrogatories, document requests or requests for admissions, the moving party's memorandum shall set forth only the particular interrogatories, document requests or requests for admissions which are the subject of the motion, the response thereto, and a concise recitation of why the response or objection is improper.

D. Minn. LR 37.2 (2000) (emphasis added). Defendants assert the incompleteness of Plaintiff's responses to document requests, and yet failed to set forth the specific request in dispute, or explain why Plaintiff's response was insufficient in its papers. That said, the Court turns now to the substance of Defendants' motion.

**1. *Financial Records***

Defendants argue that they are entitled to additional financial records related to Plaintiff's business. Plaintiff asserts that financial records related to business activities after February 16, 2001, are not relevant to the present action because Defendants were no longer employed by Plaintiff after that date. Furthermore, Plaintiff has expressed significant concerns regarding the confidential nature of these documents due to certain alleged actions by Defendants to harm Plaintiff's business and reputation.

Although their moving papers seek to compel a broad range of documents from 2001, Defendants represented at the hearing that the only 2001 records they seek are Plaintiff's payables reports through June, 2001; Plaintiff's 2001 financial statement; and Plaintiff's 2001 federal tax return. Therefore, the Court will address only those aforementioned 2001 financial records, and will deny as moot the remainder of Defendants' motion for financial records for February 16, 2001 through the present.

Additionally, the Court echoes Plaintiff's concern over the alleged mishandling of Plaintiff's confidential and business information. Although the parties have been unable to

agree on the terms of a protective order, there is no motion before the Court for such an order. However, Plaintiff has demonstrated concern over Defendants' use, and alleged misuse, of Plaintiff's sensitive financial information. Therefore, any sensitive and/or confidential financial information the Court orders Plaintiff to produce below may be designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY." All records so designated shall not be shared with anyone beyond the attorneys working on this matter, their immediate assistants, and the Court and its personnel, until such time as the parties reach an agreement on the terms of a protective order or bring a proper motion for the same.

Defendants seek all inventory records, including all inventory records and documents, actual inventory taking sheets, the January 2001 physical inventory documentation, and any subsequent physical inventory documentation. As discussed above, Defendants clarified at the hearing on this matter that they no longer seek inventory records after February 16, 2001. Therefore this portion of Defendants' motion is denied as moot.

Defendants represented to the Court that they are entitled to the January, 2001 physical inventory report, and that it is relevant to this action because it was a financial document created while Defendants were still employed by Plaintiff. However, Plaintiff represented to the Court that he has already produced the relevant inventory records to Defendants, including the January 2001 physical inventory report. Additionally, Plaintiff asserts that the physical inventory count is not relevant to the claims or defenses in this action, as the physical inventory is simply a required activity conducted by Plaintiff in order to complete his federal tax return. Therefore, based upon the representations made by

Plaintiff's counsel that all relevant documents through February 16, 2001 have already been produced, Defendant's request is denied as moot.[1]

At the hearing, Defendants clarified they seek all vendor payment records through June, 2001. Defendants stated that they had workouts in place with various vendors through June, 2001, and required the payables records in order to defend against Plaintiff's claims that the workouts had not been successful. However, Plaintiff agreed at the hearing that he would not make a specific challenge to these workouts. Therefore, based upon the representations of counsel, Plaintiff's payables reports for February through June, 2001, are not relevant, and the Court denies this portion of Defendants' motion.

Defendants further seek the 2000 and 2001 financial statements, and "complete responses" to their request number 10, "which includes all financial books and records of Rochester Lapidary Jewelers, bank reconciliation, financial statements and vendor payments and accounts payable reports." (Defs.' Mem. Supp. Mot. Compel Disc. & Modify Scheduling Order at 6; Gunderson Aff. Ex. A at 4.) Plaintiff asserts that he has already produced the relevant financial records through February 16, 2001, and Defendant has not identified specific documents, beyond the financial statements themselves, that he is lacking. Plaintiff has agreed to produce the 2000 and 2001 financial statements subject to the terms of a protective order. Thus, this portion of Defendants' motion is granted in part. Plaintiff shall produce the financial statements for 2000 and 2001, and may designate those financial statements "CONFIDENTIAL–ATTORNEYS' EYES ONLY," as discussed above.

Defendants seek cost of goods sold ("COGS") records for 2000. Plaintiff asserts that the relevant documents have already been produced, and Defendants have not specified

[1] Of course, should Plaintiff discover that he has inadvertently failed to produce the January, 2001 physical inventory report to Defendants, he shall remedy the omission forthwith.

exactly what additional records they seek. Therefore, the Court must deny Defendants' request as moot.

Defendants seek Plaintiff's personal tax returns for 2000 and 2001. Plaintiff argues that this financial information is highly confidential, and should not be disclosed. Plaintiff further asserts that his personal tax returns are irrelevant to the present action. The discovery rules allow intrusions into the private affairs of parties, but courts will guard the confidential and sensitive nature of this type of information by limiting discovery or issuing protective orders. See In re Motion to Unseal Electronic Surveillance Evidence, 965 F.2d 637, 641 (8th Cir. 1992).

The Court notes that Defendants are already in possession of Plaintiff's 2000 federal tax return, since Defendants' accountant prepared that return. However, Defendants assert that Plaintiff's accountant has re-created or filed an amended 2000 tax return. Plaintiff represented at the hearing that he is unaware of a re-created 2000 tax return, but agreed to produce the relevant re-created Schedule "C" to Defendants if it exists.[2] The Court deems this to be reasonable, since Defendants have failed to explain how Plaintiff's complete personal tax returns are relevant to the claims in this action. This is a business dispute, and Plaintiff's and his wife's personal income is not at issue. Therefore, the Court denies as moot this portion of Defendants' motion.

However, Defendants had an employment relationship with Plaintiff for less than two months during 2001. In requesting Plaintiff's 2001 personal federal tax return, Defendants argue that their accountant prepared projected financials through June, 2001, and that they

---

[2] Plaintiff's counsel explained at the hearing that Plaintiff files Schedule "C" for his business income and expenses with his personal federal tax returns, instead of filing a separate corporate return.

need to compare the actual tax return to the projected numbers to defend against this action. The Court cannot make the leap from Plaintiff's claim that he received no benefit from Defendants' work, to compelling Plaintiff's production of his personal tax return for 2001. Furthermore, Plaintiff has agreed to produce his financial statement for 2001 under protective order, and the Court so ordered above. Therefore, the Court finds that Plaintiff's 2001 personal tax return is not relevant to this action, and denies Defendants' motion for production of the same.

Finally, Defendants seek production of all credit card statements identified in Plaintiff's Expert's report. Plaintiff admits that he has been unable to locate all of the credit card statements, but has agreed to search his records again and request copies of these statements from his credit card issuer to produce to Defendants. Thus, based upon counsel's representations, this portion of Defendants' motion is denied as moot.

**2. *Medical Records***

Defendants argue that they are entitled to gain discovery access to Plaintiff's medical records under the theory that Plaintiff has put his medical condition at issue in this lawsuit. Although no federal medical privilege exists, Minnesota law provides for the privileged nature of medical records. See Lind v. Canada Dry Corp., 283 F. Supp. 861, 863-64 (D. Minn. 1963). The Minnesota Rules of Civil Procedure provide:

> If at any stage of an action a party voluntarily places in controversy the physical, mental, or blood condition of that party, . . . such party thereby waives any privilege that party may have in that action regarding the testimony of every person who has examined or may thereafter examine that party . . . with respect to the same physical, mental, or blood condition.

Minn. R. Civ. P. 35.03 (2002). Thus, if Plaintiff has voluntarily placed his medical condition at issue, he has waived his medical privilege as to that condition.

Plaintiff has made claims of fraud, duress and undue influence, rescission and restitution, and slander per se. (Compl. at 5-9.) Defendants argue that by claiming undue influence, Plaintiff has voluntarily placed his mental condition at issue, and therefore waived his medical privilege. Citing Younggren v. Younggren, 556 N.W.2d 228 (Minn. Ct. App. 1996), Defendants argue that the existence of undue influence requires disclosure of Plaintiff's medical records. In Younggren, the plaintiff's competency was at issue. An elderly father sued his adult children, alleging that he had not been competent to execute certain deeds and a power of attorney. Id. at 230-31. The court defined competency as having "enough mental capacity to understand, to a reasonable extent, the nature and effect" of what one is doing. Id. at 232 (citation omitted). The court found that the elderly Younggren in that case waived his medical privilege with his treating physician by contesting his own competency to sign legal documents. Id. at 233.

Such is not the case here. Plaintiff has not put his competency at issue, but has asserted defenses of undue influence and duress. "In order to claim duress in avoiding the enforcement of a contract, a person must be so oppressed from the wrongful conduct of another as to deprive him of free will." Copelco Leasing Corp. v. Eyerman, 855 F. Supp. 1049, 1063 (E.D.Mo. 1994). Defendants have provided no controlling legal authority to the Court linking a claim of duress to the waiver of medical privilege.

Defendants further argue that because Plaintiff answered deposition questions relating to emotional distress, that somehow Plaintiff is now making a claim for emotional distress and has put his medical condition at issue. Plaintiff has made no such claim, and is not seeking recovery for emotional damages. Minnesota courts have declined to allow one party to place the other party's medical condition at issue when the injured party has made no

claim for damages for those injuries, waived the privilege in a prior action, or voluntarily revealed sensitive medical information. See Muller v. Rogers, 534 N.W.2d 724, 727 (Minn. Ct. App. 1995). Defendants' questioning of Plaintiff during Plaintiff's deposition does not, therefore, operate to waive Plaintiff's medical privilege.

Plaintiff has not put his medical condition, either physical or mental, at issue. Plaintiff's medical condition is not relevant to the present action, and the Court finds that Plaintiff has not waived his medical privilege. Therefore, this portion of Defendants' motion is denied.

## III. DEFENDANT'S MOTION TO MODIFY SCHEDULING ORDER

The pre-trial order in this case established a deadline of May 1, 2002 for dispositive motions. The Court notes that Defendants' motion to modify the scheduling order was filed and heard well before the period for dispositive motions expired.

Modifying a pre-trial scheduling order requires a showing of good cause by the moving party. See D. Minn. LR 16.3. Good cause requires the party seeking the extension to show diligence in attempting to comply with the schedule. See Fed. R. Civ. P. 16(b) advisory committee's note (1983); Archer Daniels Midland Co. v. Aon Risk Serv., Inc. of Minn., 187 F.R.D. 578, 582 (D. Minn. 1999). In this case the Court finds that Defendants have made the requisite showing of good cause.

Defendants have made a timely request for modification, and claim they need additional time to analyze additional discovery documents they have yet to receive from Plaintiff. In light of the Court's decision to grant portions of Defendants' discovery motion, it is reasonable and necessary to extend the dispositive motion deadline to July 1, 2002, in

order for the parties to comply with the present Order and to review the additional documents.

While pre-trial orders assist in managing heavy caseloads, and help conserve time and resources, see Luigino's, Inc. v. Pezrow Cos., Inc., 178 F.R.D. 523, 525 (D.Minn. 1998), they may be modified upon a showing of good cause. See Fed. R. Civ. P. 16(b); D. Minn. LR 16.3(a). Defendants have made the requisite showing, and have shown diligence in attempting to comply with the Pre-trial Order of May 22, 2001. See Fed. R. Civ. P. 16(b) advisory committee's note (1983); Archer Daniels Midland Co., 187 F.R.D. at 582. Therefore, Defendants' motion is granted, and the deadline for dispositive motions shall be extended to July 1, 2002.

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Defendant's Motion to Compel (Doc. No. 28-1) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully in the body of this Order;

(2) Defendant's Motion to Amend the Scheduling Order (Doc. No. 28-2) is **GRANTED.** The Scheduling Order shall be amended to extend the date for dispositive motions to July 1, 2002. All dispositive motions shall be served, filed, and heard by July 1, 2002. All other deadlines shall remain the same; and

(3) All sensitive or confidential financial documents produced pursuant to this Order shall be designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY," in order to protect Plaintiff's sensitive and confidential information, until such time as the parties may agree to a protective order, or bring a proper motion for the same.

Dated: May 20, 2002

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge