**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

DONALD J. KIRCKOF, d/b/a Rochester Lapidary Jewelers,

Plaintiff,

v.

WAYNE BROWN, individually; and METROWEST CONSULTING GROUP,

Defendants.

Civil No. 01-476 (JRT/SRN)

**MEMORANDUM OPINION AND ORDER**

---

Alfred H Edwall, Jr., EDWALL LAW OFFICE, 70 County Road C West, Suite 704, Little Canada, MN 55117, for plaintiff.

John Kennedy Gunderson, MEIER KENNEDY & QUINN, 2200 North Central Life Tower, 445 Minnesota Street, St. Paul, MN 55101-2100, for defendants.

Plaintiff Donald J. Kirckof, owner of a Rochester, Minnesota discount jewelry store called Rochester Lapidary Jewelers, has filed this action against his former consultant, Wayne Brown and Metrowest Consulting Group, alleging fraud and duress in the parties' contractual relationship. Defendants have counterclaimed for, among other claims, breach of contract and unjust enrichment. The defendants have moved to dismiss for improper venue and have moved to strike one of plaintiff's reply briefs. Both parties have moved for summary judgment, and plaintiff has moved to supplement the record.

FILED NOV 27 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

For the reasons discussed below, the Court will deny defendants' venue motion and motion to strike, deny the summary judgment motions except to the extent they are uncontested, and grant the plaintiff's motion to supplement the record. The record in this case is replete with genuine issues of material fact which must be resolved by a jury. At the hearing on these motions on September 26, 2002, the Court granted plaintiff's motion to disqualify William Benoit as an expert witness.

## BACKGROUND

Shortly after purchasing Rochester Lapidary Jewelers in 1997, the plaintiff sought outside consulting help and eventually signed a consulting agreement with defendant Metrowest Consulting Group and its principal, defendant Wayne Brown. Plaintiff now claims that defendants misrepresented Brown and MCG's qualifications and that Brown was not the managing partner of a national consulting group as he represented. Plaintiff claims that the misrepresentations continued throughout the parties' contractual relationship. Plaintiff also claims that defendants threatened him and that duress caused him to continue the contractual relationship.

Plaintiff points to one memorandum in particular, the "Return on Investment" ("ROI") memorandum, given to him by defendants in April 2000. Plaintiff claims that the ROI memorandum misrepresented "savings" that defendants allegedly provided to plaintiff, and unlawfully threatened plaintiff with criminal and civil penalties.

Eventually, plaintiff terminated the strained contractual relationship in February 2001 and this litigation followed. The plaintiff seeks damages for fraud, duress, and

defamation, and also claims that defendants breached their fiduciary obligations to him. The defendants have counterclaimed for damages for breach of contract, default of promissory note, unjust enrichment, promissory estoppel, and replevin and delivery. The defendants further seek a declaratory judgment concerning the parties' rights and obligations under the February 8, 2000 consulting agreement.

## ANALYSIS

### I. Motion to dismiss for improper venue

Defendants urge the Court to enforce a "forum selection" clause[1] and dismiss the case to permit the parties to bring their claims in a Massachusetts court.[2] The Court finds that the language at issue is more appropriately considered a jurisdiction granting clause, and therefore denies defendants' motion to dismiss.

Four documents contain possible forum selection clauses. The clause at issue is identical in three of the documents; it states, "[i]t is agreed by and between the parties

---

[1] The clause is found in three agreements signed by plaintiff. The agreements were dated April 21, 1999; February 8, 2000 and September, 2000. A similar clause was found in a promissory note dated March 31, 2000.

[2] The Eleventh and Second Circuits have determined that interpreting a forum selection clause is a procedural question to be decided under federal law. *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990); *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1068 (11th Cir. 1987) (en banc) (per curiam), *aff'd on other grounds*, 487 U.S. 22 (1988). The Third Circuit, however, has held that it is a substantive legal question governed by state law. *General Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356-57 (3rd Cir. 1986). The Eighth Circuit does not yet appear to have established a definitive position. *See Farmland Indus., Inc. v. Frazier-Parrott Commodities Inc.*, 806 F.2d 848 (8th Cir. 1986) (receding from previous Eighth Circuit case which held forum selection clauses were procedural and therefore governed by federal law). In this case, the conflict is immaterial because the same result would be reached under either federal or state law.

that jurisdiction regarding this agreement shall vest in the Commonwealth of Massachusetts." The other clause at issue states, "[a]ll rights and obligations herein shall be governed by the laws of the State of Minnesota, but Kirckof hereby submits to the jurisdiction of the State and Federal Courts of the Commonwealth of Massachusetts for any action commenced to enforce this note."

True forum selection clauses are presumed valid. *United Mortgage Corp. v. Plaza Mortgage Corp.*, 853 F. Supp. 311, 315 (D. Minn. 1994). However, the language here does not amount to an exclusive forum selection provision. Courts distinguish mandatory forum selection clauses from jurisdiction granting clauses. Comparing the following clauses illustrates the difference between a jurisdiction granting clause (example one), and a true forum selection clause (example two).

Ex. 1. "The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or interpretation of this contract." *Hunt Wesson Foods v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987).

Ex. 2. "Any legal action by either party under this agreement will be brought in Minnesota." *United Mortgage Corp.*, 853 F. Supp. at 315.

In contrast to the clear language in example two, the clauses at issue here are ambiguous, at best. Though perhaps each could be construed as a "forum selection clause," the better reading is that the clauses simply would have conferred jurisdiction on the Massachusetts courts, should one party have brought suit there. The clauses use no language of exclusivity, nor do they require that any suit be "brought" or "commenced" in Massachusetts, nor do they state that disputes will be "determined" in Massachusetts courts.

Further "[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." *Terra Int'l, Inc., v. Mississippi Chemical Corp.*, 922 F. Supp. 1334, 1370 (N.D. Iowa 1996) (citing *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989)). Here there is no such language, and the Court will not infer such an intent on the part of the parties. [3]

## II. Cross motions for summary judgment — Standard of review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for

---

[3] Plaintiff argues that if the clause at issue is a forum selection clause, it should not be enforced, because the underlying contracts were tainted by fraud. *See Farmland Indus., Inc. v. Frazier-Parrott Commodities Inc.*, 806 F.2d 848, 851 (8th Cir. 1986) (holding that where "a fiduciary relationship . . . is created by a contract tainted by fraud . . . the person defrauded can not be held to the contractual forum selection clause"). Because this Court finds that the clauses are not true forum selection clauses, it need not reach the question of whether the jurisdiction granting clauses were enforceable.

the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not merely rest upon allegations or denials in its pleadings, instead it must set forth specific facts by affidavits or otherwise show that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

## III. Defendants' motions

### A. Summary judgment on the fraud claims

Defendants argue that the consulting agreements, and the representations therein, were not fraudulent, and were not induced by fraud or duress. Defendants claim that plaintiff's fraud claims fail as a matter of law, and argue that plaintiff has sustained no damage to his business.[4] Therefore, defendants move for summary judgment on the fraud claims.

---

[4] Defendants rely on the opinions of their "expert" William Benoit, for this opinion. However, the Court has disqualified Benoit as an expert, though he will be permitted to testify as a fact witness.

**1. Fraud in the initial agreement**

A plaintiff must prove five elements to succeed on a claim for fraudulent representation: (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance. *Flynn v. American Home Products Corp.*, 627 N.W.2d 342, 349 (Minn. Ct. App. 2001) (citing *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986)); *see also* 8A Dunnell Minn. Digest 2d *Fraud* § 1.00 (3d ed. 1979).

Plaintiff has offered evidence that, viewed in the light most favorable to him, indicates that entry into the initial agreement was the product of fraud. For example, the promotional material sent to plaintiff falsely represented that MCG was a group of professionals with certain levels of experience. A reasonable jury could find that defendants intended for Kirckof to rely on those false representations, and that he did so rely. *See Carpenter v. Vreeman*, 409 N.W.2d 258, 261 (Minn. Ct. App. 1987) (noting that whether a party relied upon a representation to his detriment is generally a question of fact). Plaintiff claims damages in the form of psychological and emotional harm to himself, and damage to his business. He claims that his business lost goodwill, and that he was damaged by paying fees to defendants, when Brown was actually conspiring to take over the jewelry store, and not working for Kirckof's best interests. There are

sufficient genuine issues of material fact to deny the summary judgment motion on the issue of fraud in the initial agreement.

### 2. Duress in the subsequent agreements

Duress is a condition of the mind produced by improper, external pressure or influence that practically destroys the free agency of a party and causes him to make a contract not of his own volition. *Wise v. Midtown Motors, Inc.*, 42 N.W.2d 404, 407 (Minn. 1950). Minnesota courts allow duress as a defense to a contract only when the agreement is coerced by physical force or unlawful threats. *Bond v. Charlson*, 374 N.W.2d 423, 428 (Minn. 1985) (citing *Wise*, 42 N.W.2d at 407). The victim's ability to resist the threats is judged by a subjective standard. *Wise*, 42 N.W.2d at 407. A threat to bring an action to enforce a lawful demand does not constitute duress. *Id.* Under Minnesota law, however, threats to make or cause to be made a criminal charge can be illegal, even if true. Minn. Stat. § 609.27, subd. 1(4) and (5).

The submitted documents show that defendants repeatedly told plaintiff that he faced bankruptcy, criminal liability due to tax fraud, and civil liability with creditors. The submissions also illustrate that Brown frequently denigrated plaintiff's intelligence, ability to operate the jewelry store, and character. Plaintiff claims that this abusive and threatening behavior caused him to continue his relationship with defendants.

Material questions of fact exist as to the nature of the threats and the purposes behind them. Kirckof claims that Brown's comments to him regarding civil lawsuits, bankruptcy, and IRS liability were threats made for an ulterior and illegal purpose —

namely, to "steal" the jewelry store. Kirckof argues that his free will was overcome, and that, but for the threats, he would not have consented to the later contracts. The parties vigorously dispute the question of whether Kirckof committed tax fraud. These disputes constitute specific facts that create a genuine issue for trial on this duress claim.

### 3. Legal claims

Defendants argue, regardless of whether there are factual issues, that plaintiff's claims must fail as a matter of law on three grounds. First, defendants claim that any representations made to plaintiff were solely matters of opinion, and as such cannot constitute fraud. Second, defendants note that misrepresentations of law are not actionable as fraud, and third defendants argue that Brown relied on the good-faith advice of attorneys or other professionals, which prevents a fraud action.

The Court finds that plaintiff's claims do not fail as a matter of law on any of the proffered grounds. Brown's statements to plaintiff can easily be construed as statements of fact, rather than opinion. Plaintiff points to evidence that Brown represented to plaintiff that he was an attorney, a fact which renders the alleged misrepresentations of law actionable. Finally, Brown's claims that he relied on outside professional advice are not supported by the evidence. Defendants' accountant denies providing Brown with the disputed "facts," and Brown offers no additional support for his argument.

### 4. Ratification

Even if a contract is procured by fraud, plaintiff ratifies the contract as a matter of law by accepting and retaining the benefits from the contract after he determines the

existence of the alleged fraud. *Proulx v. Hirsch Bros. Inc.*, 155 N.W.2d 907, 912 (Minn. 1968); *Carpenter v. Vreeman,* 409 N.W.2d 258, 262 (Minn. Ct. App. 1987). Here, defendants claim that because plaintiff knew about the alleged tax fraud issue early in the business relationship, but continued that relationship, plaintiff ratified the contract.

However, the ratifying party must have full knowledge of the facts and his legal rights in order to be found to have ratified the contract. *Carpenter v. Vreeman,* 409 N.W.2d 258, 261-62 (Minn. Ct. App. 1987). Plaintiff has provided evidence that the fraud, duress, and misrepresentations continued throughout the relationship, and he claims that he did not learn of the misrepresentations until after he terminated the business relationship. Summary judgment must be denied.

### B. Defendants' motion for summary judgment on plaintiff's defamation claims

#### 1. Factual basis

Plaintiff alleges that defendant Brown committed slander per se by making false statements to plaintiff's banker about plaintiff's alleged cocaine habit. Plaintiff had a business relationship and a line of credit at Sterling State Bank, and was negotiating with Chris Christopherson, the bank president, to renew the line of credit. Plaintiff alleges that Brown knew that he was negotiating with the bank, and that after Brown was fired, Brown called Christopherson to discuss plaintiff. Christopherson and a commercial loan officer took the call on speaker phone. Brown told the two bank officials that, inter alia, plaintiff had a severe cocaine problem. Plaintiff submitted the deposition of Christopherson; that deposition substantially supports plaintiff's claims.

In his deposition, plaintiff notes that defendant knew that "from time to time I recreationally had used cocaine." However, plaintiff denies using cocaine at any time during his association with Brown, and he similarly denies being a drug addict. Brown argues that any statements he made regarding plaintiff's drug addictions are true and therefore not defamatory as a matter of law.

**2. Analysis**

For a statement to be defamatory it must be published, it must be false, it must tend to harm the plaintiff's reputation, and there must be fault (at least negligence). *Britton v. Koep,* 470 N.W.2d 518, 520 (Minn. 1991); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) (holding that so long as states do not impose liability without fault, states may define standard of liability when private plaintiff alleges defamation). A slander affecting a plaintiff's business or profession is "slander per se" and actionable without any proof of actual damages. *See Becker v. Alloy Hardfacing & Eng'g Co.,* 401 N.W.2d 655, 661 (Minn. 1987). Truth, however, is a complete defense. *Richie v. Paramount Pictures Corp.*, 544 N.W.2d 21, 25 (Minn. 1996) (citing *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252 (Minn. 1980)). Because the speech at issue involved a private plaintiff and a private issue, principles of Minnesota common law apply. *See Weissman v. Sri Lanka Curry House, Inc.,* 469 N.W.2d 471, 472-73 (Minn. Ct. App. 1991) (reasoning that constitutional safeguards for public persons and public issues have not been extended to private plaintiff / private issue defamation actions).

Summary judgment is inappropriate where a genuine dispute of material fact exists. Here, plaintiff claims he was not using cocaine at the time Brown made the remarks, and Brown claims that plaintiff was using cocaine. Plaintiff does not have the heightened burden of showing malice, therefore, although the Court finds minimal evidence to support plaintiff's claims, plaintiff has provided evidence sufficient to defeat the summary judgment motion.

### C. Defendants' motion to strike plaintiff's reply brief

Shortly before the hearing on these motions, plaintiff filed a reply memorandum of law in support of plaintiff's motion to strike the affidavit of William Benoit. Because the Court disqualified Benoit as an expert, the Court did not reach plaintiff's alternative argument to strike Benoit's affidavit. Therefore, although the reply memorandum does not comport with local rule 7.1(b), it did not prejudice defendant, and the Court denies the motion to strike.

## IV. Plaintiff's motions

### A. Supplement the record

Plaintiff requested permission to supplement the record by providing the Court with a copy of a Massachusetts state court decision, *Sturbridge Isle Realty Corp. v. Wayne Brown*, 13 Mass. L. Rptr. 607, 2001 WL 1470364 (Mass. Super. 2001). Plaintiff argues that he was prevented from discovering this litigation in a more timely manner because defendants indicated that Brown was involved in no other litigation. Plaintiff

claims that he did prior searches for litigation concerning Brown, and that it was only on September 17, 2002, when he did a Westlaw search that he discovered this decision

The Court grants plaintiff's motion to supplement the record. The Court finds that plaintiff's failure to discover the evidence in a more timely fashion is excused, in part because of defendants' misleading answers to plaintiff's request for information on other litigation.

**B. Declaratory judgment**

The Court denies plaintiff's request for a declaratory judgment. Declaratory judgments furnish the Court with a procedural device to provide a noncoercive remedy in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy (such as an injunction or damages award) and in cases in which a party who could sue for coercive relief has not yet done so. *B. Braun Medical, Inc. v. Abbott Labs,* 124 F.3d 1419, 1428 (D.C. Cir. 1997) (citing Charles A. Wright, Arthur M. Miller, and Mary Kay Kane, 11 *Federal Practice and Procedure* § 2766, 2751 (2nd ed. 1983)); *see also Gruntal & Co. v. Steinberg*, 837 F. Supp. 85, 89 (D. N.J. 1993) (noting that declaratory judgment is inappropriate to adjudicate past conduct). That is not the case here; the controversy clearly has reached the stage at which either party could seek a coercive remedy, and in fact both parties are before the Court seeking damages. Therefore the Court finds that declaratory relief is inappropriate.

**C. Summary judgment on defendants' counter-claims**

Defendants counterclaim for (1) breach of contract, (2) default of promissory note, (3) unjust enrichment, (4) promissory estoppel, (5) replevin and delivery.[5]

**1. Breach of contract**

A contract is voidable if a party's assent is induced by a fraudulent misrepresentation. *Carpenter v. Vreeman*, 409 N.W.2d 258, 260-61 (Minn. Ct. App. 1987). Plaintiff's breach of contract (firing defendants) is excused if the contract is found to be voidable. As discussed at length in the Court's discussion of defendants' motion, there are genuine issues of fact regarding the alleged misrepresentations, and plaintiff's reliance on those misrepresentations. The Court finds that plaintiff has not demonstrated that there are no genuine issues of material fact.

Plaintiff also argues that defendants' breach of fiduciary duty bars all counter-claims. A fiduciary relationship creates duties for both parties. *Lawrence Warehouse Co. v. Twohig*, 224 F.2d 493 (8th Cir. 1955); *Evans v. Blesi*, 345 N.W.2d 775, 779 (Minn. 1984). A fiduciary who breaches his duty forfeits any right to compensation. *Rice v. Perl*, 320 N.W.2d 407, 411 (Minn. 1982); *In re Estate of Lee*, 9 N.W.2d 245, 251 (Minn. 1943). Minnesota courts hold that abusive conduct can constitute a breach of fiduciary duty. *See Evans*, 345 N.W.2d at 775.

---

[5] As an initial matter, the Court notes that defendants are no longer pursuing the replevin and delivery claim, or the promissory estoppel claim. Accordingly the Court grants plaintiff's motion for summary judgment on those claims.

The parties agree that there was a fiduciary relationship. Plaintiff submits significant evidence of a breach of fiduciary duty that would excuse a subsequent breach of contract. Defendants, however, point to specific evidence that is in dispute. Defendants deny threatening plaintiff, and argue that the plaintiff's evidence of abusive behavior is taken out of context. It is inappropriate for the Court to resolve such factual disputes on summary judgment.

### 2. Default of promissory note and unjust enrichment

Genuine issues of fact also exist as to the enforceability of the promissory note. As discussed above, there is conflicting evidence as to whether plaintiff's entry into the promissory note was the result of fraud and duress. Brown claims that the April 3, 2000 ROI memorandum was provided to plaintiff before plaintiff signed the promissory note; plaintiff disputes that evidence. Conflicting evidence also has been submitted as to the alleged breach of fiduciary duty. This conflicting evidence renders summary judgment inappropriate.

Similarly, summary judgment is inappropriate on the unjust enrichment claim. Material issues of fact exist as to whether defendants' conduct constituted a breach of fiduciary duty.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion to supplement the record [Docket No. 70] is **GRANTED**.

2. Defendant's motion to strike plaintiff's reply memorandum [Docket No. 76] is **DENIED;**

3. Defendants' motion to dismiss for improper venue or for summary judgment [Docket No. 45] is **DENIED**;

4. Plaintiff's motion for summary judgment [Docket No. 55] is **GRANTED in part**, and **DENIED in part** as follows:

a. Plaintiff's motion for summary judgment on the replevin and delivery counterclaim and the promissory estoppel claim is **GRANTED**;

b. In all other respects, plaintiff's motion is **DENIED.**

DATED: November 27, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge