**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Donald J. Kirckof, d/b/a,**
**Rochester Lapidary Jewelers,**

**Plaintiff,**

**v.**

**Wayne Brown, individually, and**
**Metrowest Consulting Group**

**Defendants.**

**Civil No. 01-476 (JRT/SRN)**

**ORDER**

---

Alfred H. Edwall, Jr., Esq., on behalf of Plaintiff

John C. Gunderson, Esq., on behalf of Defendants

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Plaintiff's Motion to Amend the Scheduling Order and to Amend Plaintiff's Complaint to Seek Punitive Damages and to Conform to the Evidence (Doc. No. 81); and Motion to Amend the Scheduling Order, To Reopen Discovery, and For Sanctions (Doc. No. 78). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons set forth below, Plaintiff's motions are, as limited herein, granted.

## I. BACKGROUND

Plaintiff is the owner of Rochester Lapidary Jewelers, Inc. In April of 1999, Plaintiff and



DEC 0 5 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Defendants entered into an agreement wherein Defendants were suppose to review the accounting and management aspects of Plaintiff's business. Plaintiff alleges that Defendants fraudulently induced Plaintiff to retain Defendants by dramatically misrepresenting their experience, education, partnership status, and other things. Plaintiff also asserts that Defendants misrepresented the benefit of the services Defendants provided to Plaintiff. Finally, Plaintiff alleges that while reviewing Plaintiff's business, Defendants falsely stated that Plaintiffs were in violation of numerous criminal and Internal Revenue Service laws. Defendants then allegedly used such statements and others to coerce Plaintiffs into signing over control of the jewelry business to Defendants.

The parties conducted discovery and filed dispositive motions. During his deposition on September 5, 2001, Defendant Wayne Brown was asked about any other litigation in which he was involved. Brown said that he had been involved in a bankruptcy, litigation concerning his house, litigation concerning some monies owed to him, and some litigation involving CR Realty. Brown said the CR Realty litigation was about a third-party that was supposed to produce some records to back him up, but that it was settled. Recently, however, Plaintiff's counsel has discovered another case involving Wayne Brown in Massachusetts entitled Sturbridge Isle Realty Corp. v. Wayne Brown. The Sturbridge case, apparently the CR Realty matter referred to by Brown, was, in fact, not settled, and involves strikingly similar claims brought against Brown as the Plaintiff has brought herein. Accordingly, Plaintiff moves this Court to amend the Pretrial Scheduling Order, to reopen discovery, to amend the complaint and add a claim for punitive damages, to conform to the evidence, and for sanctions.

## II. PLAINTIFF'S MOTION TO AMEND THE SCHEDULING ORDER AND TO AMEND PLAINTIFF'S COMPLAINT TO SEEK PUNITIVE DAMAGES AND TO CONFORM TO THE EVIDENCE

### A. Parties' Positions

Plaintiff argues that good cause exists for his untimely attempt to amend his pleadings and assert a punitive damages claim based on fraud because of Defendant's misrepresentations in his deposition. Plaintiff argues that he recently discovered the Sturbridge case despite Defendant's deposition statement that all litigation he was involved in had settled. Plaintiff asserts that the Sturbridge case provides strong evidence of Defendant's pattern of deceit and fraud while representing clients. Therefore, Plaintiff argues good cause exists to allow the amendment of his pleadings to assert a claim for punitive damages to deter Defendant's conduct.

Plaintiff also argues that he should be allowed to amend his Complaint under Federal Rule of Civil Procedure 15(a) or (b) by adding a specific claim for breach of fiduciary duty and a claim for punitive damages based on the breach of fiduciary duty. Plaintiff argues that a breach of fiduciary duty claim has always been a factual part of this case, and the parties have briefed and argued that claim on summary judgment without objection.

Defendant argues that Plaintiff had all the facts necessary to plead a claim for punitive damages based on fraud when Plaintiff filed his Second Amended Complaint. Defendant argues that he did not mislead Plaintiff about the litigation he was involved in, and that the Sturbridge case is a matter of public record. Therefore, Plaintiff argues that Defendant was not diligent in bringing the punitive damages claim. In addition, Defendant argues that punitive damages are not available under Minnesota law for Plaintiff's claims.

Defendant also argues that good cause does not exist to allow Plaintiff to amend his

complaint. Defendant states that Plaintiff has always had the factual information to plead a claim for breach of fiduciary duty each time Defendant has previously amended his Complaint. Defendant argues that he does not consent to Plaintiff's claim for breach of fiduciary duty.

**B. Whether "Good Cause" Has Been Shown**

"Where, as here, the deadline for the amendment of pleadings has long since expired, the propriety of the Motion for leave to amend 'is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure.'" Luigino's, Inc. v. Pezrow Companies, 178 F.R.D. 523, 525 (D. Minn. 1998) (citations omitted). Although "[i]t is true that the Federal Rules are usually liberally construed to permit parties to amend pleadings" under Rule 15, "[a]s regards case management orders . . . the Federal Rules set a less forgiving standard. Federal Rule of Civil Procedure 16(b) specifies that such an order 'shall not be modified except upon a showing of good cause and by leave of the district judge' [or by a magistrate judge]. Thus, a moving party must first make the requisite showing. *Even then* the district court retains discretion as to whether to grant the motion. As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them." Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001) (emphasis added) (citing In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999)). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." Bradford, 249 F.3d at 809 (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992)). In addition, "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992); accord Bradford, 249 F.3d at

809. However, "[i]f that party was not diligent, the inquiry should end." Johnson, 975 F.2d at 609.

Here, good cause exists to allow Plaintiff to amend his complaint to assert a claim for punitive damages based on fraud. Defendant did conceal or at the very least misrepresented the existence of a lawsuit filed against him entitled Sturbridge Isle Realty Corp. v. Wayne Brown, 13 Mass. L. Rptr. 607, 2001 WL 1470364 (Mass. Super. 2001). A review of Defendant's deposition testimony on the subject of the litigation that he has been involved in brings to light the falsity of Defendant's deposition testimony on that subject:

> Mr. Edwall: Mr. Brown, you mentioned that bankruptcy earlier. Have you ever been in any other litigation?
> Mr. Brown: Personally or on clients' behalf?
> Mr. Edwall: Well, let's talk about personally first.
> Mr. Brown: Yes, a couple of times.
> Mr. Edwall: Okay. When?
> Mr. Brown: When I bought my house in 1987 I was in litigation seeking damages against the seller.
> Mr. Edwall: Anything else?
> Mr. Brown: I did bring suit against a client in Rhode Island for moneys due but the matter never went to trial. It was settled.
> Mr. Edwall: Who is the client?
> Mr. Brown: Ronzio Pizza.
> Mr. Edwall: How do you spell that?
> Mr. Brown: R-O-N-Z-I-O.
> Mr. Edwall: In Providence, Rhode Island?
> Mr. Brown: Yes.
> Mr. Edwall: Who was the principal of Ronzio Pizza?
> Mr. Brown: Peter P. D'Amico, Esquire.
> Mr. Edwall: Meaning he is a lawyer?
> Mr. Brown: Yes.
> Mr. Edwall: Anything else?
> Mr. Brown: Yes. I was sued several years ago regarding a records problem that was settled. It never went to trial.
> Mr. Edwall: What was the records problem?
> Mr. Brown: Just some missing records that I could not–that actually a third party was to produce to back up my testimony that they never did.

Mr. Edwall: When was that?
Mr. Brown: Five, six years ago. I would have to go back in the calendar and look at the exact year. Maybe even seven years ago.
Mr. Edwall: Who sued you?
Mr. Brown: It was a real estate company.
Mr. Edwall: Who was it?
Mr. Brown: C.R. Realty.
Mr. Edwall: Where are they?
Mr. Brown: Out of business now, but at the time they were in Newton, Massachusetts.
Mr. Edwall: Anything else?
Mr. Brown: No.

(Brown Dep. pp. 127-29).

The "records problem," as Defendant classifies it, was actually a lawsuit brought by Sturbridge Realty against Defendant for deceit and misrepresentation in connection with Sturbridge hiring Defendant to be an expert witness. The Sturbridge Isle Realty Corp. v. Wayne Brown, 13 Mass. L. Rptr. 607, 2001 WL 1470364 (Mass. Super. Sept. 5, 2001) case arose out of the following facts. Sturbridge Realty owned a piece of property and leased part of it to Joan Bassett. Id. at *1. Sturbridge Realty later sued Bassett, and Bassett counterclaimed against Sturbridge. Id. Sturbridge Realty then contacted Wayne Brown about being an expert witness in its litigation against Bassett. Id. Wayne Brown then provided a "Backgrounder" to Sturbridge, similar to the one provided in the present case, and made other representations about his experience and education. Id. Many of the representations Wayne Brown made turned out to be false leaving his expert testimony inadequate. Id. at *2. Sturbridge Realty then turned around and sued Wayne Brown for deceit and misrepresentation. Id. at *3. In granting Sturbridge's motion for summary judgment on the deceit and misrepresentation counts, the Honorable Diane M. Kottmyer held that: "The summary judgment record therefore establishes that Brown made false

representations as to his credentials on the "Backgrounder" and his resume and at the deposition taken in the Basset litigation and that SIR, to its detriment, relied on the accuracy of the representations by hiring him, using him as an expert witness and paying him $33,771.51." Id. at 4. Given the similarity of facts and the damaging nature of the ruling in the Sturbridge litigation, Defendant was certainly less then forthcoming in explaining that litigation.

It is clear that, contrary to Defendant's deposition statement, the Sturbridge litigation was not merely a "records problem," the Sturbridge litigation was not "settled" as Defendant lost on summary judgment the very day he said the matter settled, and Sturbridge Isle Realty sued Defendant. Moreover, Defendant's argument that "Mr. Brown could not have been aware of any court order involving this litigation because the order was issued that same day [as his deposition]," is also misleading. Defendant did not testify that he was not aware of a court order. Rather, Defendant testified that the Sturbridge, or CR Realty, litigation had settled–and impliedly settled about seven years prior. In addition, Defendant's argument that CR Realty is a part of Sturbridge, and, therefore, his statement that CR Realty had sued him was a disclosure of the Sturbridge litigation is simply unreasonable. Defendant's statements regarding the Sturbridge litigation, whether outright lies, half-truths, or simply vague, were very misleading and caused Plaintiff to reasonably overlook the Sturbridge litigation.

Plaintiff was reasonably diligent in seeking the information necessary to bring a punitive damages claim. Although Plaintiff *may* have had the facts necessary to bring a punitive damages claim earlier, it was not until the unearthing of Defendant's previous deceitful conduct with other clients and misrepresentations in his deposition that Plaintiff thought it ultimately necessary to seek punitive damages to deter any such future conduct. Defendant's misrepresentations during

his deposition provided Plaintiff with a good cause excuse as to why Plaintiff did not seek a timely amendment. See also Donald Kirckof v. Wayne Brown, et al., No. 01-476, Mem. Op. and Order, at 13 (D. Minn. Nov. 27, 2002) (allowing Plaintiff to supplement the record because "plaintiff's failure to discover the evidence in a more timely fashion is excused, in part because of defendant's misleading answers to plaintiff's request for information on other litigation").

### C. Whether the Complaint May Be Amended to Conform to the Evidence

Federal Rule of Civil Procedure 15(b) states in part that "[w]hen issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings," and such amendment to conform to the evidence can be made "at any time." Where a claim or issue is not formally pleaded but is directly raised or addressed by the parties on a motion for summary judgment, the parties are deemed to have impliedly consented to that unpleaded claim or issue and an amendment to conform will be allowed. See Excalibur Group, Inc. v. City of Minneapolis, 116 F.3d 1216, 1223 n.5 (8th Cir. 1997) (noting that the plaintiff did not specifically plead a particular claim but that it was properly before the court because the parties argued the claim on summary judgment and the district court addressed the issue); Missouri Hous. Dev. Comm'n v. Brice, 919 F.2d 1306, 1315-16 (8th Cir. 1990); Whitaker v. T.J. Snow Co., 151 F.3d 661, 663 (7th Cir. 1998) (explaining that the amended complaint only included a warranty claim, but "[b]ecause both parties squarely addressed the strict liability theory in their summary judgment briefs, the complaint was constructively amended to include that claim."); Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995) ("For purposes of Rule 15(b), implied consent to the

litigation of an unpleaded claim may arise from one of two generic sets of circumstances. First, the claim may actually be introduced outside the complaint--say, by means of a sufficiently pointed interrogatory answer or in a pretrial memorandum--and then treated by the opposing party as having been pleaded, either through his effective engagement of the claim or through his silent acquiescence.").

Here, both parties actively and directly addressed the unpleaded breach of fiduciary duty claim in their respective briefs on summary judgment. In Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss or for Summary Judgement (Doc. No. 49), Plaintiff specifically states on the opening page, in his conclusion, and on pages 3, 9, 10, 15, 19, 24, and 27 that Defendant breached his fiduciary duty. In Defendant's Reply in Support of Motion to Dismiss or for Partial Summary Judgment (Doc. No. 51), Defendant acknowledges that "Plaintiff's principal claim is now a breach of fiduciary duty claim." (Def.'s Reply. in Supp. of Mot. to Dismiss or for Partial Summ. J., at 2). Then, in Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment on the Defendant's Counterclaims (Doc. No. 56), Plaintiff devotes an entire section of his brief to the issue of breach of fiduciary duty (Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. on the Def.'s Countercl., at 20-25) ("II. BROWN'S COUNTERCLAIMS ARE BARRED BY HIS BREACH OF FIDUCIARY DUTY INHERENT IN THE AGENCY RELATIONSHIP BETWEEN THE PARTIES."). In response, Defendant devoted an entire section of his brief refuting the substantive merits of Plaintiff's claim that Defendant breached his fiduciary duty. (Def.'s Resp. to Pl.'s Mot. for Summ. J., at 26-31) ("IV. Brown did not breach any fiduciary duties."). In addition, the Honorable Judge John R. Tunheim addressed the issue of breach of fiduciary duty in his November 27, 2002, Order. (Doc. No. 88, at

15). Importantly, Defendant did not object to the insertion of the breach of fiduciary duty issue into the case on summary judgment. Rather, Defendant argued the substantive merits of whether he breached his fiduciary duty. Given the extensive discussion of the breach of fiduciary duty issue on summary judgment, this is not a situation where Plaintiff is leaving Defendant "exposed to the vicissitudes of trial by ambush." Rodriguez, 57 F.3d at 1172.

Accordingly, Defendant impliedly consented to the assertion of such claim and an amendment under Rule 15(b) to formally plead a claim for breach of fiduciary duty and a claim for punitive damages based on breach of fiduciary duty will be allowed.

**D. Requirements to Assert a Claim for Punitive Damages**

Even though the Pretrial Scheduling Order may be amended and an amendment under Rule 15(b) will be allowed, Plaintiffs must actually be able to assert a claim for punitive damages under Minnesota law. Minn. Stat. §§ 549.191 and 549.20 furnishes the framework for pleading a claim for punitive damages where the claim is based upon Minnesota law. E.g., Hern v. Bankers Life Cas. Co., 133 F.Supp.2d 1130, 1134-35 (D. Minn. 2001). Under § 549.191, a plaintiff may not plead punitive damages as an original matter; rather, a plaintiff must seek leave of the court based on a prima facie showing of entitlement. Under § 549.20,[1] a plaintiff can establish a prima

---

[1] Minn. Stat. § 549.20 Subdivision 1 reads:
(a) Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others.
(b) A defendant as acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
(1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
(2) deliberately proceeds to act with indifference to the high probability of injury

facie showing of entitlement to plead punitive damages by demonstrating through clear and convincing evidence that the defendant deliberately disregarded the rights or safety of others.[2] "The term 'prima facie' does not refer to a quantum of evidence, but to a procedure for screening out unmeritorious claims for punitive damages." Swanlund v. Shimano Indus. Corp., 459 N.W.2d 151, 154 (Minn. App. 1990). A court does not make credibility findings and does not consider evidence offered in opposition. E.g., id. Rather, the court examines the plaintiff's evidence and determines if such evidence left unrebutted would reasonably allow a conclusion that clear and convincing evidence will establish that the defendant deliberately disregarded the rights or safety of others. E.g., id.

Prior to the recent Minnesota Supreme Court opinion in Jensen v. Walsh, 623 N.W.2d 247 (Minn. 2001), there was disagreement as to whether punitive damages could be awarded in the absence of personal injury. Compare Luigino's, Inc. v. Pezrow Companies, Inc., 178 F.R.D. 523 (D. Minn. 1998), with Molenaar v. United Cattle Co., 553 N.W.2d 424 (Minn. App. 1996), and Barnes v. Logan, 122 F.3d 820 (9th Cir. 1997). In Jensen, however, the Minnesota Supreme Court held that punitive damages can be awarded for property damage. Jensen, 623 N.W.2d at 251 ("Thus, we hold that a plaintiff may seek punitive damages in an action for intentional damage to property where the only damage is to property . . . .").

It is well settled Minnesota law that punitive damages are not recoverable for a breach of

---

to the rights or safety of others.

[2] Clear and convincing evidence is that which is more than a preponderance but less than proof beyond a reasonable doubt. Olson v. Snap Prod., Inc., 29 F.Supp.2d 1027, 1036 (D. Minn 1998).

contract, no matter how willful. Wild v. Rarig, 234 N.W.2d 775, 789-90 (Minn. 1975); Minnesota-Iowa Television Co. v. Watonwan T.V. Imp. Ass'n, 294 N.W.2d 297, 309-10 (Minn. 1980); Barr/Nelson, Inc. v. Tonto's, Inc., 336 N.W.2d 46, 52 (Minn. 1983). Rather, punitive damages are only available "in exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort." Wild, 234 N.W.2d at 789. Under Minnesota law, punitive damages are available for the independent tort of fraud and remain so even after the enactment of § 549.20. See, e.g., Molenaar v. United Cattle Co., 553 N.W.2d 424, 427, 428 (Minn. App. 1996) (citing cases allowing for punitive damages with a fraud claim); Stoering v. O'Grady, 1994 WL 273431, at *2 (Minn. App. June 21, 1994) (same); see also E.H. Boerth Co. v. LAD Prop., 82 F.R.D. 635 (D. Minn. 1979) (allowing recovery for breach of contract and punitive damages for independent tort of fraud).

The Jensen case only solidifies the availability of punitive damages with a claim for fraud. In Jensen, the Court recited the history of punitive damages and the developments that gave rise to § 549.191 and 549.20. 623 N.W.2d at 250-51. The punitive damages statute was enacted in response to allegedly rapidly rising product liability insurance costs. Id. In accord with that concern, cases decided by the Minnesota Supreme Court limited the availability of punitive damages in product liability actions where the only damage was to property. Id. (noting its decisions in Eisert v. Greenberg Roofing & Sheet Metal Co., 314 N.W.2d2226 (Minn. 1982) and Independent Sch. Dist. No. 622 v. Keene Corp., 511 N.W.2d 728 (Minn. 1994)). The Court in Jensen, however, was careful to explain that claims of property damage, other than product liability actions, "may be protected through an award of punitive damages." Id. at 251. Importantly, the Court in Jensen concluded that "[i]t is . . . appropriate, in determining whether

punitive damages should be allowed, to *focus on the wrongdoer's conduct* rather than to focus on the *type of damage* that results from the conduct." Id. (emphasis added). Accordingly, the focus is on the defendant's conduct (for instance fraudulent conduct) and whether that conduct was in deliberate disregard of the rights or safety of others "regardless of the nature of the resulting damage." Id.

Punitive damages are available for breach of fiduciary duty in Minnesota where the wrongdoers conduct amounts to a deliberate disregard to another's rights. See Evans v. Blesi, 345 N.W.2d 775, 781 (Minn. App. 1984) (allowing a claim for punitive damages based on breach of fiduciary duty).

**E. Whether Defendant Has Met the Requirements of § 549.20**

**1. Fraud**

Under Minnesota law, the elements of fraud are:

> (1) There must be a representation; (2) That representation must be false; (3) It must have to do with a past or present fact; (4) That fact must be material; (5) It must be susceptible of knowledge; (6) The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false; (7) The representer must intend to have the other person induced to act, or justified in acting upon it; (8) That person must be so induced to act or so justified in acting; (9) That person's action must be in reliance upon the representation; (10) That person must suffer damage; (11) That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

Hanson v. Ford Motor Co., 278 F.2d 586, 591 (8th Cir. 1960); Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986).

Plaintiff has alleged facts that would sustain a claim for fraud. See also Donald Kirckof v. Wayne Brown, et al., No. 01-476, Mem. Op. and Order, at 13 (D. Minn. Nov. 27, 2002) (concluding that "Plaintiff has offered evidence that, viewed in the light most favorable to him,

indicates that entry into the initial agreement was the product of fraud"). Here, Plaintiff argues that there were many false representations. Plaintiff argues that Defendant falsely stated that Metrowest Consulting Group (MCG) was a professional partnership, that Defendant was the "Managing Director" of MCG, that MCG had more than one partner, that MCG had "staff executives," and that MCG had over fifty years of collective business experience. In addition, Plaintiff argues that Defendant falsely stated that he had a graduate degree or graduate education from Boston University, and that he was an attorney. Plaintiff argues that Defendant falsely stated that Plaintiff and Plaintiff's father were in violation of numerous criminal laws (bank fraud, tax fraud, and illegal sales of jewerly). Finally, Plaintiff argues that Defendant falsely stated in Defendant's "ROI Analysis" that he had increased Plaintiff's business' net worth by over eight million dollars and improved the cash flow.

All of the above representations were, of course, material given the fact that Plaintiff sought Defendant's services in order to streamline Plaintiff's accounting and employee management systems, and to increase the profitability of Plaintiff's business.

All of the above representations are acutely susceptible to Defendant's knowledge given the fact that almost all of the representations concern either Defendant's personal characteristics, Defendant's alleged partnership's characteristics, or statements Defendant made.

Defendant knew whether the above statements were false. Certainly Defendant knew whether he had a graduate education, as that term is normally used, or whether he was an attorney, or whether his MCG business operated in a partnership form and had the stated characteristics. Defendant has also alleged sufficient facts to show that Defendant stated that Plaintiff was in violation of numerous criminal laws and that Defendant had increased Plaintiff's

business' net worth by over eight million dollars without knowing whether it was true or false.

By making these statements, Defendant obviously intended Plaintiff to rely on them as a basis for selecting Defendant to help Plaintiff improve Plaintiff's business. (Pl.'s Mem. in Support of Mot. to Amd. Schd. Or. And Amd. Comp. to Seek Punitive Damages, at 2, citing Brown Dep.). Plaintiff has also alleged that Defendant made the statements about criminal violations and improving the businesses net worth in order to induce Plaintiff into continuing with Defendant's services and assign power over Plaintiff's business to Defendant.

Plaintiff was induced to act by Defendants statements, and Plaintiff relied on Defendant's statements in taking action. (Kirckof Aff., Ex. C at 1-5).

Finally, Plaintiff alleged that he suffered damage as a result of Defendant's statements. Plaintiff paid Defendant hundreds of thousands of dollars based upon Defendant's alleged false statements, and Plaintiff would not have entered into any relationship with Defendant absent Defendant's alleged false statements. (Kirckof Aff., Ex. C at 4).

In analyzing Plaintiff's claim, this Court reminds the parties that the Court does not make any credibility determinations and does not review evidence in opposition to Plaintiff's allegations. E.g., Swanlund v. Shimano Indus. Corp., 459 N.W.2d 151, 154 (Minn. App. 1990). Moreover, "where the parties are in a confidential relationship, [as here] fraud is more readily found." Keough v. St. Paul Milk Co., 285 N.W.2d 809, 825 (Minn. 1939).

Plaintiff has also shown that clear and convincing evidence will support his claim. For instance, Plaintiff has presented evidence that Defendant made the above representations concerning his qualifications and MCG orally and in writing. (Pl.'s Mem. in Support of Mot. to Amd. Schd. Or. and Amd. Comp. to Seek Punitive Damages, at 3). Plaintiff has produced

documents sent by Defendant to Plaintiff prior to them entering into a relationship concerning Wayne Brown's Biographical Overview. (App. Ex. C). The Biographical Overview contains representations about the organization of MCG. Id. For other documents containing representations about MCG, see Appendix Exhibit C. Plaintiff has produced evidence contradicting many of the representations contained these documents. To illustrate, the Mission Statement of MCG says that MCG is "a professional management consulting *partnership*," and Defendant's Biographical Overview says that Defendant "rejoin[ed] Metrowest Consulting Group as Managing *Partner* in 1994." Plaintiff has produced strong evidence that, in fact, MCG consisted solely of Defendant working out of his home. (App. Ex. B, Brown Dep. at 10, 34-35). Moreover, there was nothing for Defendant to "rejoin" in 1994 because MCG consisted entirely of Defendant; accordingly, Defendant was managing himself. (App. Ex. B, Brown Dep. at 10, 34-35). In the Family Business Overview Section, it says Defendant has a "staff of executives." (App. Ex. C). During Defendant's deposition, he admits he did not have any staff executives as employees. (App. Ex. B, Brown Dep. at 10, 34-35). In the Practice Overview Section, it says that "*[o]ur* firm is owned and managed by consulting professionals representing over *fifty years* of diverse business success." Again, MCG consisted only of Defendant, and Defendant is only fifty-three years old himself and admits that the fifty years of experience includes the experience of other people Defendant repeatedly calls strategic partners. (App. Ex. B, Brown Dep. at 39-40).

Plaintiff has also presented evidence contradicting Defendant's representations as to Defendant's qualifications and education. Plaintiff has produced documents where Defendant lists himself as "Esquire" or "Of Counsel." Plaintiff has presented evidence that, in fact,

Defendant does not have a graduate degree, and is not an attorney. (App. Ex. B, Brown Dep. at 11-13) ("I am not degreed beyond the bachelors."); see generally Sturbridge Isle Realty Corp. v. Wayne Brown, 13 Mass. L. Rptr. 607, 2001 WL 1470364 (Mass. Super. Sept. 5, 2001) (holding in a similar factual matter on summary judgment that Wayne Brown "made false representations as to his credentials on the "Backgrounder" and his resume"). Plaintiff has presented deposition testimony from Defendant where Defendant states that he created the documents he sent to Plaintiff and that he intended for Plaintiff to rely on them. (App. Ex. B, Brown Dep. at 26-27) ("Q: Did you intend for him [Plaintiff] to rely upon these? A: Yes, I did.").

An honest reading of much of Defendant's deposition concerning his qualifications and the organization of MCG (App. Ex. B, Brown Dep. at 1-42) and a comparison of that information with the documents submitted supplies reasonably clear and convincing evidence that Defendant fraudulently represented his education and the organization and experience of MCG. Moreover, the same evidence also demonstrates that a reasonable jury, presented only with this evidence, could quite properly find that Defendant fraudulently misrepresented his education, qualifications, the experience of MCG, and the organization of MCG intentionally and in deliberate disregard of Plaintiff's right to be free from such false statements. Of course, this "right" flows from the law's recognition of fraud as a tort cause of action and the duties thereby imposed on all members of society. In addition, the fact that Defendant has been held liable for misrepresentation and deceit in the recent past, Sturbridge Isle Realty Corp. v. Wayne Brown, 13 Mass. L. Rptr. 607, 2001 WL 1470364 (Mass. Super. Sept. 5, 2001), provides additional evidence that Defendant's false statements were made deliberately.

### 2. Breach of Fiduciary Duty

Defendant does not dispute that there was an agency relationship between Plaintiff and Defendant. (Def.'s Mem. in Resp. to Pl.'s Mot., at 26). Defendant also does not dispute that, as Plaintiff's agent, Defendant owed a fiduciary duty to Plaintiff. Id. Finally, Defendant does not dispute that the fiduciary duty requires the utmost loyalty, integrity, and good faith. Id. Rather, Defendant disputes the facts surrounding his alleged breach. Any facts marshaled by Defendant, however, are not considered when deciding if Plaintiff can plead a claim for punitive damages based upon a breach of fiduciary duty. E.g., Swanlund, 459 N.W.2d at 154.

Plaintiff has presented enough evidence such that a jury could reasonably find, based upon clear and convincing evidence, that Defendant breached his fiduciary duty to Plaintiff in deliberate disregard of Plaintiff's rights. The evidence convincingly suggests that Defendant neither acted in good faith towards Plaintiff nor was loyal to Plaintiff. For instance, Plaintiff has supplied convincing evidence that Defendant, in essence, conspired with Plaintiff's employee, Tracy Schones, to gain control of Plaintiff's business. A *sampling* of this disturbing evidence includes the following portions taken from Tracy Schones deposition:

> Mr. Edwall: Okay. And in the fall of 1999, was it your impression that Mr. Brown was trying to pull you closer to him?
> Mr. Schones: Most definitely.
> * * *
> Mr. Edwall: Did Mr. Brown, in the fall of 1999, offer you any inducements, other than maybe to continue to live [business livelihood], to get you to be on his side in his little battles with Mr. Kirckof?
> Mr. Schones: Basically that things were going to be better and he was going to take care of me. Not at that time, but later on down the road, that I was going to be his man in Rochester.
> * * *
> Mr. Edwall: Was this typical of the way that Mr. Brown did things, to say in one memo that he [Mr. Kirckof] is a moron and in the next memo that he hopes he had

> a nice restful Sunday morning?
> Mr. Schones: All the time. Now that I look back, it reminded me of an analogy I guess, a beaten wife. He would always just tear into Donald and then hours later, a day later, then he would say, you know, he would try to play it down by saying Donald forced him to act that way. It was always Donald's fault that Wayne blew up, that he didn't want to do it, that he really cared for Donald and all that stuff. But he felt–at least he always portrayed to me, he would always paint, because after a period of time I started wondering, started wondering, you know, was this needed, until he basically got me doing it to him at the end there.
> Mr. Edwall: What do you mean that he got–he, I take it you meant Mr. Brown?
> Mr. Schones: I meant Wayne Brown, Mr. Brown.
> Mr. Edwall: How did Mr. Brown get you to beat on Donald, as you put it?
> Mr. Schones: Sandy Hart and I were supposed to keep him down. He would always–he would always basically, not every morning but pretty much every morning, start off, if he was in Boston or if he was in Rochester here, by telling you something that Donald could basically do no right. And he would give me some detail or something that would infuriate me, because like I said, once again, we are talking about my livelihood. So he used me to basically keep Donald down.

(Schones Dep. at 19-20, 26-27, App. Ex. H).

Plaintiff's evidence also convincingly demonstrates that Defendant induced Plaintiff into making further contracts and obtaining some control over Plaintiff's business through threats and intimidation that are wholly contrary to Defendant's duty to act with integrity, loyalty and in good faith. See generally Evans v. Blesi, 345 N.W.2d 775, 779-80 (Minn. App. 1984) (concluding that the abrasive and intimidating manner in which a partner obtained a share transfer from another partner constituted a breach of fiduciary duty). The following provides a *sampling* of such evidence. In a memo from Defendant to Plaintiff on February 16, 2001, Defendant states:

> You are a lazy, lying sack of shit who deserves nothing in the way of respect or help. . . . If you and I are unsuccessful, next week, in coming to terms for you to get out of this business entirely, then I will move immediately to liquidate the company to recover the $127,000+ you have owed me since 1999 and the $637,500 which you still owe me in irrevocable contractual obligations. When

> this and your other secured and unsecured debts are paid, you will be left with nothing ... and you will have nobody to blame but yourself. You are truly the biggest idiot I have ever met and you deserve to fail and to be destitute. Don't even bother to page me, as I have no interest in speaking with you ever again. It's a total waste of time.

(App. Ex. Q).

Defendant also threatened to "take Plaintiff down" if Plaintiff did not start "playing ball" with Defendant. (Kirckof Dep., at 38, App. Ex. J). Defendant threatened to expose Plaintiff's alleged tax fraud and other alleged criminal violations, and called Plaintiff's wife at their home making the same threats. Id. at 39. Defendant also repeatedly berated Plaintiff with vulgarities and other threats. Id. at 40. This is confirmed by Tracy Schones deposition:

> Mr. Edwall: Did Mr. Brown tell you that he had control over Donald Kirckof because–or some kind of influence over Donald Kirckof because of his knowledge of this alleged tax fraud?
> Mr. Schones: Yes. Yes.
> * * *
> Mr. Edwall: [Referring to an Exhibit] Then it says there, hang in there, we will get through this or he will be bankrupt and in jail. Do you see that?
> Mr. Schones: Correct. On the bottom there.
> Mr. Edwall: Did that cause you some concern with respect to your working for Mr. Kirckof?
> Mr. Schones: Correct.
> Mr. Edwall: How did it cause you concern?
> Mr. Schones: If I would have a livelihood. Basically if Donald didn't see that Wayne was in the right, Wayne was going to bankrupt him, basically, and put him in jail.
> Mr. Edwall: And you later heard Mr. Brown say that to Mr. Kirckof, right?
> Mr. Schones: Many times.
> Mr. Edwall: And did Mr. Brown shout when he spoke to Mr. Kirckof?
> Mr. Schones: Lots of times.
> Mr. Edwall: He yelled, didn't he?
> Mr. Schones: Yes. I was–I was basically witness to pretty much all of them. I got caught up in them.
> Mr. Edwall: Mr. Brown was a very profane man?
> Mr. Schones: Correct.

(Schones Dep. at 24-25, App. Ex. H).

Based upon this and other evidence in the record, this Court finds that clear and convincing evidence exists such that a jury could find Defendant deliberately disregarded Plaintiff's rights in regard to Plaintiff's fiduciary relationship with Defendant.

## II. PLAINTIFF'S MOTION TO AMEND THE SCHEDULING ORDER, TO REOPEN DISCOVERY, AND FOR SANCTIONS

Plaintiff seeks to amend the Pretrial Scheduling Order to allow for additional limited discovery concerning Defendant's prior alleged misrepresentations and Defendant's involvement in Sturbridge Isle Realty Corp. v. Wayne Brown, 13 Mass. L. Rptr. 607, 2001 WL 1470364 (Mass. Super. 2001). Plaintiff also requests that Defendant bear the costs associated with this additional discovery, and the attorneys fees in bringing this motion.

At the hearing on this matter, Defendant explained that he does not object to the additional discovery and will pay for his attendance at an additional deposition. To the extent Defendant does oppose Plaintiff's request, this Court disagrees.

Based upon the above discussion, Plaintiff has shown good cause to amend the Pretrial Scheduling Order. Plaintiff's request for additional discovery and costs are granted as explained and limited below.

**THEREFORE, IT IS HEREBY ORDERED that:**

1. Plaintiff's Motion to Amend the Scheduling Order and to Amend Plaintiff's Complaint to Seek Punitive Damages and to Conform to the Evidence (Doc. No. 81) is **GRANTED**.

2. Plaintiff's Motion to Amend the Scheduling Order, To Reopen Discovery, and For Sanctions (Doc. No. 78) is **GRANTED** as limited herein.

   a. Defendant shall produce, at the offices of Plaintiff's counsel, within fifteen days of the date of this Order, all deposition transcripts and transcripts of trial testimony (whether in his custody or in his attorneys' custody) referring or relating to the matter of Sturbridge Isle Realty Corp. v. Wayne Brown, 13 Mass. L. Rptr. 607, 2001 WL 1470364 (Mass. Super. 2001).

   b. Defendant shall produce, at the offices of Plaintiff's counsel, within fifteen days of the date of this Order all interrogatory answers and all documents referring or relating to the Sturbridge Isle Realty Corp. v. Wayne Brown, 13 Mass. L. Rptr. 607, 2001 WL 1470364 (Mass. Super. 2001) matter. Such documents shall include, but are limited to, pleadings, interrogatory answers, affidavits, and all matters referring or relating to the litigation except communications directly between Defendant and his attorney, if any, in that litigation. If Defendant does not have immediate access to those documents, he shall gain access to them at his own expense and produce them.

   c. Plaintiff may take the deposition of Defendant within thirty days of receipt

of the above described documents. The deposition will take place at the offices of Plaintiff's counsel upon ten days written notice. Defendant shall bear the cost of travel, and Defendant shall pay for the original transcript of the deposition and for Plaintiff's copy.

**d.** Defendant shall pay to Plaintiff all reasonable attorneys fees incurred in preparing for and taking Defendant's deposition as ordered herein.

Dated: December 4, 2002

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge